(Reap. Dec. 9518)

NORTH AMERICAN ASBESTOS CORP. *v.* UNITED STATES

Entry No. 763307.

(Decided October 7, 1959)

*Sharretts, Paley & Carter* (*Richard F. Weeks* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

MOLLISON, Judge: This appeal for reappraisement has been submitted for decision upon a stipulation of counsel reading, so far as pertinent, as follows:

1. The merchandise herein consists of chemically pure blue absestos yarn designated either as "B/80/3 ply" or "B/85/2 ply" exported from England on or about September 1957.

2. That the merchandise herein was appraised at the foreign value for such merchandise.

3. That the plaintiff claims that the merchandise should be appraised at the foreign value for similar merchandise.

4. That there is no export value for either such or similar merchandise.

5. That if the court finds that there is a foreign value for such merchandise then that value is the appraised value.

6. That if the court finds that there is no foreign value for such merchandise then it is hereby agreed that the foreign value for similar merchandise is 5 shillings 2½ pence per pound plus export packing.

7. That the case is submitted for decision on this stipulation together with Plaintiff's Exhibit 1 heretofore received into evidence.

It is apparent from the foregoing that the issue has been narrowed to the question of whether a foreign value for *such* merchandise existed within the meaning of section 402(c), as amended, of the Tariff Act of 1930. As in force and effect at the time of importation of the merchandise, the said section read as follows:

SEC. 402. VALUE.

     *       *       *       *       *       *       *

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Under the facts as set forth in the stipulation, it being established that there was no export value for either such or similar merchandise, it follows that if there existed a foreign value for *such* (as distinguished from *similar*) merchandise, then it is the correct value of the merchandise for valuation purposes, regardless of whether or not a foreign value for similar merchandise existed. *United States* v. *Meadows Wye & Co., Inc.*, 15 Ct. Cust. Appls. 451, 454, T.D. 42643. In such event, the correct value of the merchandise is that returned by the appraiser. On the other hand, if a foreign value for *such* merchandise did not exist, then the correct value of the merchandise is the foreign value for *similar* merchandise, the amount of which is stated in the stipulation, and is the value claimed by the plaintiff.

In the case of manufactured goods, such as the asbestos yarn at bar, it has been held that "such" merchandise refers to goods identical with that under appraisement, made by the same manufacturer, and offered for sale under the conditions laid down in the statute. *Prudential Lumber Corp. et al.* v. *United States*, 69 Treas. Dec. 1505, Reap. Dec. 3850.

The evidence with respect to the existence or nonexistence of foreign value for such merchandise is contained in the affidavit, plaintiff's

collective exhibit 1, referred to in the stipulation. This is the affidavit of one Albert George Grant, who identifies himself therein as the commercial manager of the manufacturer and exporter of the involved blue asbestos yarn, The Cape Asbestos Company, Limited (hereinafter referred to as "Cape Asbestos" or "the company"). Mr. Grant had been associated with the company for 34 years, during all of which time he was directly concerned with the sale of such yarns, and, by reason of his experience, was familiar with all sales of the company's products for home consumption in England.

The affidavit establishes that so-called pricelists were prepared by Cape Asbestos, setting forth prices for all of its products, including blue asbestos yarn such as that here involved. The affidavit also establishes that these lists were for private use only by the company and were not published or circulated to the trade.

The lists, therefore, do not, in themselves, constitute evidence of offers for sale, and, on the contrary, other statements of the affiant establish that merchandise such as that involved was not offered for sale or sold to all purchasers for home consumption in England at the prices set forth in the lists.

The lists appear to have been used by Cape Asbestos as a reference point in the sale of its products, including blue asbestos yarn, rather than as established selling prices. According to the affidavit, Cape Asbestos was not only a manufacturer of asbestos yarn but was also a manufacturer of products made with the use of such yarn. It, therefore, had the self-interest of protecting itself against the competition of other manufacturers of such products, and obviously would not wish to supply yarn to other manufacturers at prices which would enable the products of the latter to compete with those of Cape Asbestos.

The affidavit indicates that the prices contained in the lists for blue asbestos yarn were, therefore, calculated at figures which did not represent the market value of such yarn in the ordinary course of trade, and establishes that the prices were calculated at figures which would be approximately equal to the price of cloth made from each count or cut of yarn.

It appears that, at or about the time of exportation of the asbestos yarn in question, the buying public for that type of merchandise for home consumption in England consisted of three classes of purchasers—manufacturers, i.e., those who bought the yarn for use in the manufacture of various kinds of asbestos packing; merchants, i.e., those who bought for resale; and small consumers, i.e., those who bought the yarn for maintenance purposes and not for further manufacture.

The affidavit establishes, however, that there was no uniformity in the price at which blue asbestos yarn was offered and sold to any of the three classes of trade.

While it appears that there was no refusal on the part of Cape Asbestos to sell asbestos yarn such as that here involved to any purchaser, nevertheless, it appears that it adopted selling tactics designed to achieve the effect of restricting the sale and use of its blue asbestos yarn according to its own interests. Thus, as to manufacturers, offers were made only to two manufacturers. The offers and sales to one of these were at the prices shown in the lists, while the offers and sales to the other were at a 19 per centum discount from the said list prices, the said discount not being based upon quantity purchased.

As to the other categories of purchasers, merchants and small consumers, Cape Asbestos had a policy of discouraging sales to these purchasers by offering blue asbestos yarn at prices in excess of those set forth in the lists, the price actually paid being determined by the bargaining ability of the purchaser. In no case did the purchasers in these categories pay less than the list prices, and it is stated that "there have been many many cases where they paid amounts in excess of that shown."

I am of the opinion that the evidence establishes that there was never any single price at which blue asbestos yarn manufactured and sold by Cape Asbestos was freely offered for sale to all who wished to buy such merchandise. The prices at which the merchandise was offered and sold evidently represented the result of considerations of self-interest against competition with its own products, and of the bargaining ability of the individual purchasers. There was such a lack of uniformity in the result that it cannot be said that *any* price represented the price at which such merchandise was freely offered for sale under any circumstances which, of course, include the conditions specified in the statute. *United States* v. *M. V. Jenkins et al.*, 26 Cust. Ct. 467, Reap. Dec. 7924, affirmed in *Same* v. *Same*, 39 C.C.P.A. (Customs) 158, C.A.D. 479.

The evidentiary value and sufficiency of plaintiff's collective exhibit 1 has been attacked on a broad basis in the brief filed on behalf of the defendant. I have examined the affidavit carefully in the light of the criticisms made, and I find that the statements made in the affidavit upon which I have made the foregoing findings are statements of evidentiary facts made by an affiant whose competency to make the statements had been established, and that they are sufficient, together with the stipulated facts, to overcome the statutory presumption attending the value found by the appraiser.

On the record before me, I find as facts:

(1) That the merchandise involved in this appeal for reappraisement consists of chemically pure blue asbestos yarn, designated either as "B/80/3 ply" or "B/85/2 ply," exported from England on or about September 1957.

(2) That at the time of exportation of the said merchandise there was no price at which such merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of England, in the usual wholesale quantities and in the ordinary course of trade.

(3) That at the time of exportation of the said merchandise similar merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of England, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at 5 shillings, 2½ pence, per pound, plus export packing.

(4) That at the time of exportation such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of England, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

I conclude as matters of law:

(1) That foreign value, as that value is defined in section 402(c), as amended, of the Tariff Act of 1930, is the proper basis for the determination of the value of the involved merchandise, and

(2) That such value is as set forth in finding of fact No. 3, above. Judgment will issue accordingly.