(A.R.D. 123)

United States *v.* North American Asbestos Corp.

Entry No. 763307.

Second Division, Appellate Term

(Decided May 16, 1960)

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *W. R. Johnson* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of a decision and judgment of a single judge in a reappraisement proceeding involving the value of an importation of blue asbestos yarn. (43 Cust. Ct. 500, Reap. Dec. 9518.) The merchandise in issue, which was exported from England on or about September 6, 1957, was appraised at 6 shillings, 5½ pence per pound net, plus cost of packing. It is claimed to be properly valued at 5 shillings, 2½ pence per pound, plus export packing. Both the appraised value and the claimed value are stated to represent foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, which provides as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The case was submitted to the trial court upon the following stipulation:

1. The merchandise herein consists of chemically pure blue asbestos yarn designated either as "B/80/3 ply" or "B/85/2 ply" exported from England on or about September 1957.

2. That the merchandise herein was appraised at the foreign value for such merchandise.

3. That the plaintiff claims that the merchandise should be appraised at the foreign value for similar merchandise.

4. That there is no export value for either such or similar merchandise.

5. That if the court finds that there is a foreign value for such merchandise then that value is the appraised value.

6. That if the court finds that there is no foreign value for such merchandise then it is hereby agreed that the foreign value for similar merchandise is *5 shillings 2½ pence per pound plus export packing.*

7. That the case is submitted for decision on this stipulation together with Plaintiff's Exhibit 1 heretofore received into evidence. [Italics quoted.]

Plaintiff's collective exhibit 1, referred to in said stipulation, consists of an affidavit of one Albert George Grant, together with certain pricelists mentioned in said affidavit.

The affiant stated therein that he is the general commercial manager of the Cape Asbestos Co., Ltd. (hereinafter called Cape Asbestos), which company was the manufacturer and exporter of the merchandise at bar. It appears from said affidavit that Cape Asbestos is engaged in the business of manufacturing and selling various asbestos products, including yarns and rovings, and certain fabrics and articles manufactured therefrom. Grant, who has been associated with the company for 34 years, has, at all times, been directly concerned with the sales of its products. He affirmed that since the formation of the North American Asbestos Corp., appellee herein, all sales and offers for sale of asbestos yarn for exportation to the United States were confined to said corporation.

In respect to sales in England for home consumption during the times pertinent hereto, the affidavit shows that Cape Asbestos observed a practice of preparing certain pricelists, which were never published or circulated throughout the trade, nor were ever intended to serve as offers to sell any of the company's merchandise at the listed prices. The lists were private documents prepared for the company's own use in negotiating sales.

Sales of the company, according to affiant, fell into two categories, to wit, to manufacturers who convert the yarn into various kinds of packing, and to "merchants and small consumers who, to my own certain personal knowledge, use Blue asbestos yarn in the condition in which we sell it for maintenance purposes and not for further manufacture."

It appears that only two customers actually were included within the range of the manufacturer-purchaser class. One of them was always charged the list prices for the yarn it purchased, while the

other usually received a discount of approximately 19 per centum from said list prices, which discount did not depend upon the quantity purchased. Although Cape Asbestos did not refuse to sell other manufacturers, neither did it solicit business from any one else in that category.

It also appears that since Cape Asbestos itself converted asbestos yarn into further manufactured articles, it was not especially desirous of selling the yarn to any purchasers who might be likely to produce competitive manufactured products. Accordingly, and with respect to the class designated as "merchants and small consumers," prices were charged for the yarn which approximated the prices of cloth made from the same count of yarn. No merchant or small consumer ever paid less than the prices shown on the private pricelists, many paid more, the exact amount of each sale being ultimately determined by the bargaining ability of the customer.

In the opinion of the trial court, the evidence contained in plaintiff's collective exhibit 1 sufficed to establish that there was no single uniform price at which blue asbestos yarn, of the condition and quality of the imported merchandise, and manufactured by Cape Asbestos, was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade for home consumption in England. Accordingly, it was held that foreign value for such merchandise had been successfully negated, and that the stipulated value for similar merchandise constituted the proper value of the imported yarn.

The principle of the trial court's decision that lack of uniformity of price at which merchandise is offered for sale in wholesale quantities prevents the finding of foreign value finds support in the case of *United States* v. *M. V. Jenkins et al.*, 26 Cust. Ct. 467, Reap. Dec. 7924, where it was said, "the statute on appraisment contemplates a single price as determinative of dutiable value." Our appellate court, in affirming the *Jenkins* decision, 39 C.C.P.A. (Customs) 158, C.A.D. 479, expressly approved "the validity of the complex points of law passed upon and decided by the respective tribunals of the Customs Court." That one of said "points of law" embraced the proposition that, in the absence of a single price for all purchasers, statutory foreign value does not exist, is evident from the syllabus of the court's decision, which states the following:

The concurrent findings of the tribunals below that there was no uniform price at which the firebrick here involved was freely offered for sale to all purchasers for home consumption in the usual wholesale quantities in the ordinary course of trade; that there was no foreign, export, or United States value for such or similar merchandise; and that cost of production, as defined in section 402(f), Tariff Act of 1930, was the proper basis for the determination of the value of the merchandise; is supported by substantial evidence of record.

Appellant's quarrel with the trial court's decision is less concerned with the principle of law applied than with the sufficiency of the evidence to invoke it. Citing the cases of *Brooks Paper Co.* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593; *United States* v. *Fisher Scientific Co.*, 44 C.C.P.A. (Customs) 122, C.A.D. 648; and *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705, counsel for appellant contends that plaintiff's collective exhibit 1 contains statements of the witness which are mere conclusions of ultimate issuable facts, lacking in probative value. Appellant challenges the entire document as devoid of evidentiary facts to establish whether or not sales or offers for sale to the various customers were made in the ordinary course of trade, and in the usual wholesale quantities, or to support the conclusion that prices charged the customers were not uniform. It is argued that without primary evidence of sales, in the form of invoices, or an itemized list of purchasers with the quantities bought and the prices paid, there are no facts to support the opinion of the affiant that no single price existed in the wholesale marketing of such merchandise.

It is further urged that where pricelists serve as bases for calculating prices at which sales are made, it is immaterial that such lists are private, and not circulated throughout the trade. They are, nevertheless, indicia of freely offered prices and, hence, of value.

We are of opinion that appellant's position on the subject of the evidentiary value of pricelists stems from a misconception of their true function in the chain of proof of statutory market value. The mere fact that pricelists are admissible in evidence by statutory authorization (28 U.S.C. § 2633) does not necessarily clothe them with probative force. Pricelists have weight not in establishing the *bona fides* of their *per se* quotations, but in reflecting that a seller is proffering his wares to the buying public. Foreign value is defined as the price at which merchandise is freely offered for sale to all purchasers, and pricelists constitute one of several methods of showing that offers of sale are in fact made. Consequently, if they are retained as private documents, and are never seen by any purchaser, it is difficult to understand how they can be considered evidence of a vendor's willingness to sell. We are in agreement with the trial court that the pricelists contained in plaintiff's collective exhibit 1 are without evidentiary value in this action.

Neither do we find error in the trial court's conclusion that "the statements made in the affidavit upon which I have made the foregoing findings are statements of evidentiary facts made by an affiant whose competency to make the statements had been established, and that they are sufficient, together with the stipulated facts, to overcome

the statutory presumption attending the value found by the appraiser."

We are not unmindful of the precepts of the *Brooks, Kobe, Fisher,* and *Baar & Beards* cases, *supra,* concerning the necessity of careful distinction between evidentiary facts and ultimate issuable facts and have sought to preserve them here. Under the circumstances which prevail in the case before us, however, we do not characterize the statements of affiant as mere conclusions unsupported by evidentiary facts.

It must be borne in mind that, in each of the cited cases, certain categorical statements, not corroborated by factual evidence of sales or offers for sale, were held insufficient to establish *affirmatively* a value different from the presumptively correct value found by the appraiser. The measure of the burden of proof devolving upon a plaintiff in such a situation was stated in the *Brooks* case, *supra,* as follows:

By statutory provision[1] Congress has directed that (1) the value found by the appraiser shall be presumed to be the value of the merchandise and (2) the burden shall rest upon the party who challenges its correctness to prove otherwise.

To sustain his burden of proof, and overcome this statutory presumption, it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. *United States* v. *Gane and Ingram, Inc.,* 24 C.C.P.A. (Customs) 1, T.D. 48264, citing *United States* v. *T. D. Downing Co. (George H. Sweetnam, Inc.),* 20 C.C.P.A. (Customs) 251, T.D. 46057. It is clear, from a reading of section 402 (c) and (d), *supra,* that in order to prove foreign value or export value as a basis for a valid reappraisement, *the appellant must establish, inter alia, the usual wholesale quantities* in which such or similar merchandise involved was freely offered for sale to all purchasers in the principal markets of the country from which exported, etc. This court has so construed the statute in the case of *M. V. Jenkins et al.* v. *United States,* 34 C.C.P.A. (Customs) 33, C.A.D. 341, wherein we held that failure to satisfactorily establish the usual wholesale quantities constitutes a failure to establish one of the essential elements of a valid reappraisement. If appellant has failed to establish the usual wholesale quantities, then, in accordance with the foregoing, it seems clear that he has failed to meet his burden of proof, and the valuation set by the appraiser must stand. For reasons presently to appear, the outcome of this case depends on whether appellant has introduced substantial evidence to establish the usual wholesale quantities. [Italics quoted.]

[1] This provision appeared in section 501 of the Tariff Act of 1930, 19 U.S.C. § 1501, until June 25, 1948, when it was removed from that section to section 2633, Title 28, U.S.C.

The value claimed by appellee in the instant case has been established by stipulation of the parties, and all that it sought to prove here was that the appraiser's action in finding a foreign value for

"such" merchandise was erroneous for the reason that prices at which it was sold or offered for sale were not uniform. Stated otherwise, appellee was merely endeavoring to negate the facts, inherent in the appraiser's return of value, that such merchandise was freely offered for sale in the usual wholesale quantities and in the ordinary course of trade at prices which were the same for all. That the quantum of proof required to controvert a presumed state of facts is less than that needed to affirmatively establish such facts in the first instance seems clear.

The affiant herein had been directly concerned with, and had personal knowledge of, the sales made by his company for a period of 34 years. His testimony took into account all sales made at or about the time of exportation and for 8 months prior thereto. Since he knew all of the customers of the company, and was familiar with the prices they paid for blue asbestos yarn, he was competent to state from that personal knowledge that prices varied and were not uniform.

Accordingly, we are of opinion that the court below properly regarded the statements of Grant in plaintiff's collective exhibit 1 as having evidentiary value. It is observed, however, that, in analyzing the facts therein, the trial judge concluded that it set forth three categories of purchasers of blue asbestos yarn, despite affiant's statement that said merchandise was sold to only two classes of customers. In addition to the manufacturers who bought the yarn for the production of asbestos packing, and small consumers who bought the yarn for maintenance purposes, the trial judge enumerated, as a separate class, merchants who bought the yarn for resale.

As we view the affidavit, there is no explanation of what the "merchants" actually do with the yarn they buy from Cape Asbestos. The affiant recites that "merchants and small consumers * * * use Blue asbestos yarn in the condition in which we sell it for maintenance purposes and not for further manufacture." Since it is apparent that anyone who uses asbestos yarn for maintenance purposes would be a consumer thereof, regardless of any other business he may conduct, it seems clear that something else was intended by the affiant in the specific mention of the word "merchants." And since counsel for appellee, in briefing the issues before this court, also refer to "merchants" as those who bought for resale, it may be assumed, for the purpose of this case, that they so disposed of said merchandise.

In view of our decision in the case of *Glanson Co.* v. *United States*, 31 Cust. Ct. 473, A.R.D. 33, wherein, it appearing that sales by the manufacturer were made at prices which varied solely with the category of the purchaser, but that wholesalers resold the involved merchandise, we held that before foreign value could be negatived, sales by wholesalers must be examined to determine whether they embodied

all the elements in the definition of such value, something must be said here concerning resales by merchants. The record does not show whether such sales were wholesale sales within the contemplation of section 402(c), *supra*, or retail sales not ordinarily considered in determining foreign value.

Webster's New Collegiate Dictionary, second edition, 1951, defines a "merchant" as

1. Originally, a trafficker; a trader; now esp., one who traffics on a large scale, esp. with foreign countries.

2. One who carries on a retail business; a storekeeper or shopkeeper.

Having in mind the sales structure of Cape Asbestos, as pictured in plaintiff's collective exhibit 1, as well as the fact that the stipulated foreign value of "such" merchandise, if there be any, tends to coincide with the manufacturer's list price for blue asbestos yarn of the quality here involved, we are inclined to construe the word "merchant" in accordance with the second of its dictionary meanings, and, for that reason, rule out resales by merchants as having any bearing on the issue of the foreign value of such merchandise.

Based upon the foregoing considerations, we affirm the decision and judgment of the trial court, and, in so doing, adopt the findings of fact and conclusions of law set forth therein.

Judgment will be entered accordingly.