(A.R.D. 134)

UNITED STATES *v.* PHILIPP BROTHERS CHEMICALS, INC.

Entry Nos. 793395; 819639; 705346; 751911.

Second Division, Appellate Term

(Decided June 13, 1961)

*William H. Orrick, Jr.,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellant.

*Eugene R. Pickrell* (*George E. Long* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This is an application for review of the decision and judgment of the trial court, covering the appeals for reappraisement listed in schedule "A," hereto attached and made a part hereof, holding that there was no foreign value for certain sodium perborate, exported from Germany between June 25, 1953, and December 24, 1953, and finding value on the basis of export value. *Philipp Brothers Chemicals, Inc.* v. *United States,* 43 Cust. Ct. 523, Reap. Dec. 9532.

The merchandise was entered at the invoice price, less nondutiable charges, plus an addition to make home market value equal to column 11 on the consular invoice, namely, the unit value of deutsche marks 105 per 100 kilos, packed, tax included, and was appraised on the basis of foreign value of deutsche marks 158 per 100 kilos, net weight, less 2 per centum, plus cost of drums. The trial court found dutiable value on the basis of export value at $11.40 per 100 pounds, less ocean freight and insurance.

This case was submitted for decision before the trial court upon the testimony of Charles H. Bendheim, secretary and treasurer of the importer, and Ferdinand A. Kertess, president of Terra Chemicals, Inc., and affidavits with invoices and lists of sales for home consumption and export to the United States of Rudolf Mihm and Friedrich Wilhelm Schmidt, employees of the manufacturer of the involved merchandise, as well as affidavit of Friedrich Dolle, of Kali-Chemie A.G., the only other manufacturer of sodium perborate in Germany, with lists of sales of sodium perborate for home consumption. A report of a vice consul was received in evidence as defendant's collective exhibit A.

The importer contends that no foreign value exists for this merchandise on the ground that, at the time of exportation, it was not freely offered for sale to all purchasers in the home market, since the price was arrived at by bargaining. *United States* v. *Jenkins et al.*, 24 Cust. Ct. 517, Reap. Dec. 7774; *United States* v. *Mexican Products Co.*, 28 C.C.P.A. (Customs) 80, C.A.D. 129; *United States* v. *D. Hauser*, 34 Cust. Ct. 517, Reap. Dec. 8451.

The record herein clearly establishes that sodium perborate was manufactured in Germany by the shipper herein, hereinafter referred to as "Degussa" and "Kali-Chemie A.G.," both of whom made sales for home consumption in Germany based upon bargaining. Accordingly, there is no single price at which the merchandise was freely offered for home consumption.

The so-called pricelist attached as exhibit B of defendant's collective exhibit A need not be considered herein since the merchandise was not actually sold at a single price. Pricelists *per se* are admissible in evidence by statutory authority given in 28 U.S.C., section 2633. However, the weight to be given to said pricelists is a matter within the discretion of the court. Pricelists which are private documents, not circulated in the trade, have been held to have no evidentiary value. *United States* v. *North American Asbestos Corp.*, 44 Cust. Ct. 801, A.R.D. 123. In any event, the lists of sales received in evidence as part of defendant's collective exhibit A and those supplied by the importer establish that, apparently, the pricelist was not followed.

Based upon the foregoing, we are of the opinion that the trial court was correct in holding that there is no foreign value of such merchan-

dise. In addition, we feel that the importer herein has satisfactorily established that the only other manufacturer of sodium perborate in Germany also sells its merchandise on the basis of bargaining and, therefore, "similar" merchandise was not freely offered for sale for home consumption in Germany.

The issue before the court is, therefore, whether such or similar merchandise is freely offered for sale for export to the United States. The record herein establishes that Terra Chemicals, Inc., is the American office of "Degussa" chemicals; that, due to certain currency restrictions in force at the time of importation herein, Terra Chemicals received a commission on all sales to the United States in order to help pay its office rent. This commission was referred to variously as a commission or a profit. From the facts contained in the record, it would appear that, since no exclusive agreement was ever made between "Degussa" and Terra Chemicals, Inc., nor the importer herein, the merchandise was freely offered, and the amount received by Terra Chemicals was a commission. The term "profit," as used by Dr. Kertess, appears to cover a situation where the commissions exceeded the rent for the office of Terra Chemicals, Inc. Any such commissions would then be considered by him as a profit. The record further establishes that the importer herein ordered the merchandise directly from the manufacturer "Degussa," sending a copy of the purchase order to Terra Chemicals, and that the merchandise was actually sold by "Degussa" to the importer herein. The record also establishes that sales of sodium perborate for export to the United States were not restricted to Terra Chemicals, but that the exporter herein freely offered the involved merchandise to all purchasers in the United States, which included about five other purchasers, in addition to the importer herein. In all instances, it would appear whether ordered directly from "Degussa" or Terra Chemicals, Inc., or through an exporter, the commission was paid to Terra Chemicals, Inc.

A factual situation similar to this was involved in the case of *Robinson & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 644, T.D. 41486, wherein the orders could be placed either with the manufacturer in Switzerland or his agent at New York at the same price. The court held the evidence was sufficient to establish export value, although all merchandise "whether ordered directly from the manufacturer in St. Gall or through the manufacturer's agent in New York, [is] consigned to the manufacturer's agent in New York and billed by the consignee in the consignee's own name to the persons, firms, or corporations placing the order for the laces." See also *United States* v. *Massce & Co. et al.*, 21 C.C.P.A. (Customs) 54, T.D. 46379, wherein the *Robinson* case, *supra*, was reviewed; *United States* v. *Nicholas Gal et al.*, 15 Cust. Ct. 395, Reap. Dec. 6192; *United States*

*v. F. C. Gerlach & Co. et al.*, 7 Cust. Ct. 494, Reap. Dec. 5443. Based upon the foregoing, it is apparent that the court may find an export value where a foreign manufacturer sells or offers for sale for export to the United States, even though a commission is paid to an agent in the United States.

We, accordingly, find that the merchandise involved herein is freely offered for sale for export to the United States.

An examination of the invoices and lists of sales for export to the United States for the involved period, from June 1953 through December 1953, establishes 23 sales. The major portion of these 23 sales is represented by 8 sales in quantities ranging from 4,989.3 kilos to 5,000 kilos. The lists of sales and invoices actually indicate nine shipments within the range of the above quantities. However, a further examination of said pricelists and invoices establishes that an invoice, dated November 30, 1953, having a net weight of 4,990 kilos, is actually a part shipment under a purchase order which is covered by another invoice, dated December 7, 1953, containing 20,072 kilos. In all other instances, the quantity covered by the major portion of sales is an individual purchase and sale of the quantities indicated and does not appear to be a partial shipment under a single contract. Under the *Jenkins* case, *supra*, and the case of *United States* v. *M. Minkus*, 21 C.C.P.A. (Customs) 382, T.D. 46912, the usual wholesale quantity is determined by the major portion of sales. Having arrived at the usual wholesale quantity, a further examination of the invoices and lists of sales for export to the United States establishes that the highest price paid for the above quantity was $25.13 per 100 kilos, c. i. f., N.Y. This figure appears to be the mathematical equivalent of the value of $11.40 per 100 pounds, c.i.f., N.Y., found by the trial court. This price, therefore, represents the proper dutiable value of the involved merchandise.

Based upon the record, we find as facts:

1. That the merchandise under consideration consists of sodium perborate, exported from the Federal Republic of Germany between June 25, 1953, and December 24, 1953.

2. That the prices for sales of sodium perborate sold in Western Germany, the country of exportation, were determined by bargaining between the manufacturer and the purchaser.

3. That, on or about the exportation of the involved merchandise, such or similar merchandise was not freely offered for sale to all purchasers for home consumption in the country of exportation.

4. That the principal market for the sale of sodium perborate for export to the United States was Frankfurt, Germany.

5. That the usual wholesale quantity in which sodium perborate was sold or offered for sale for export to the United States was 5,000 kilos.

6. That sodium perborate was freely offered to all purchasers for export to the United States by the manufacturer in Western Germany.

7. That, at the time of exportation of such merchandise, the price at which such merchandise was freely offered for sale and sold to all purchasers in the principal market of Western Germany, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was $25.13 per 100 kilos, less ocean freight and insurance.

Accordingly, we conclude as matters of law :

1. That there is no foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938, for such or similar merchandise.

2. That the proper basis for the determination of the value of the involved merchandise is export value, as that value is defined in section 402(d) of the Tariff Act of 1930, and that such value was $25.13 per 100 kilos, less ocean freight and insurance.

The decision and judgment of the trial court are, therefore, affirmed. Judgment will be entered accordingly.