(A.R.D. 198)

HILL BROWN CORP. *v.* UNITED STATES

Entry No. 1352, etc.

Third Division, Appellate Term

(Decided October 18, 1965)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the appellant.
*John W. Douglas*, Assistant Attorney General (*Charles P. Deem*, trial attorney), for the appellee.

Before DONLON and RICHARDSON, Judges; DONLON J., concurring

RICHARDSON, Judge: This is an application which was filed by the importer seeking a review of the decision and judgment of a single

judge sitting in reappraisement in *Hill Brown Corp.* v. *United States*, 53 Cust. Ct. 412, Reap. Dec. 10823, and holding that cost of production, as defined in 19 U.S.C.A., section 1402(f) (section 402(f), Tariff Act of 1930), is the proper basis for determining the value of the subject merchandise, and that such value is represented herein by the appraised values. The involved merchandise consists of printed linen drapery and slipcover fabrics which were exported from England and entered at Philadelphia, Pa. It is the appellant's contention both in the trial court and before this court that United States value, as defined in 19 U.S.C.A., section 1402(e) (section 402(e), Tariff Act of 1930, as amended), is the proper basis for determining the value of the linen fabrics, and that such values are $1.172 per yard net for the 1953 exportations and $0.975 per yard, net, for the balance of the merchandise.

Pertinent facts in the case are summarized in the opinion of the single judge as follows:

The record herein consists of the testimony of one Peter Kaufmann, who, during the years from 1952 through 1955, was an officer, director, and general manager of the plaintiff corporation, together with certain exhibits numbered 1 through 10, hereinafter described. In substance, they tend to establish the following facts:

Plaintiff is a corporation engaged in three separate business operations. Primarily, it is a manufacturer of domestic drapery and slipcover fabrics which are produced in Clifton, N.J. It is also an importer of two distinct lines of products, to wit, "man-made fibers for resale to the textile industry in the United States," and "decorative linens for distribution throughout the United States for drapery and slipcover purposes." It is the last-mentioned phase of plaintiff's business with which we are here principally concerned.

The linen fabrics in issue, as illustrated by four samples marked plaintiff's illustrative exhibits 1–4, are described as having been "made exclusively of flax, woven in various countries on the European continent, printed in an England printing plant in Barrowford, Lancashire, and shipped in patterns and designs typical of English decorative fabrics which had a wide market in this country." Except for the design, they are stated to be commercially interchangeable. These fabrics are purchased by plaintiff for its own account with exclusive American rights for the designs selected.

It appears that, during the weaving operations, linen fabrics are produced in lengths of 50 or 100 yards, but before printing, to permit a continuous process, the pieces are stitched together to form lengths as long as 1,000 yards. As imported, the merchandise was described as being flat-folded, pressed in bales, in individual piece lengths of several hundred yards, so handled to permit economies in shipment and to assure proper attractive packaging for the American market. After importation, the material was washed, cut into individual pieces approximately 50 yards long, doubled, and rolled on cardboard cores. It was sold in piece units of 40 to 50 yards or more, at prices which did not vary by reason of the quantity purchased. These prices were $1.62 per yard, less 2 per centum 10 days, net 30, f.o.b. Clifton warehouse on all sales to department stores, retailers, and manufacturers, and $1.52 per yard, less 2 per centum 10 days, net 30, f.o.b. Clifton, for all sales to jobbers and wholesalers, for the period through November 30, 1953. Thereafter the prices dropped to $1.35 or

$1.25, respectively, less 2 per centum 10 days, net 30. Jobbers were allowed the 10 cents a yard discount to enable them to sell to small retailers. Plaintiff made no sales to consumers other than those designated as manufacturers. Otherwise there were no restrictions on the resale, disposition, or use of its merchandise by the purchasers.

The documentary evidence which was before the single judge consists of unpublished pricelists, a schedule of charges paid by the importer upon importation of the merchandise which is the subject of the instant appeals, fiscal balance sheets pertaining to the importer's business operations, and a sheet showing a breakdown of the general expenses and profit allocated to the importer's linen fabrics division. On the evidence, the trial court found the merchandise which was sold for domestic consumption in the United States to be similar to the merchandise in its imported condition, in spite of change in appearance after importation; that the merchandise was not freely offered for sale to all who cared to purchase it to the extent that it was not offered to consumers; and that the importer's calculations for general expenses and, hence, for profit, were not properly ascertained by apportionment of the same equally among all phases of its business operations in the absence of proof of the actual incurring of expenses in such proportions. The court concluded that, by reason of such failure of proof, the appraised values must be sustained as being the proper dutiable values of the subject merchandise.

Appellant has made numerous assignments of error against the decision under review, among which are claims that the trial court committed error:

1. In finding and holding that the dutiable values for the imported printed linen drapery and slip cover fabrics under appeal should be based upon "cost of production" values as defined in Section 402(f) Tariff Act of 1930, and that such values were the appraised values.

2. In finding and holding that the record does not establish that at or about the dates of exportation of the merchandise here involved such or similar imported merchandise was freely offered for sale for domestic consumption in the United States to all purchasers in the usual wholesale quantities and in the ordinary course of trade.

*       *       *       *       *       *       *

8. In not finding and holding that the linen was freely offered for sale in the ordinary course of trade in the principal market of the United States to all purchasers in the usual wholesale quantities packed ready for delivery at the time of exportation at the following prices:

|  | Period | Price |
|---|---|---|
|  | 9/1/53–11/30/53 | $1.62 per yard, less 2%, packed |
|  | 12/1/53– 6/ 1/55 | $1.35 " " " " " |

As we view the record before us, we find that the evidence adduced by the appellant in support of a United States value concerns itself exclusively with the sales history of the imported merchandise which is the subject of the involved reappraisement appeals. Although Mr.

Kaufmann did testify that his company, the appellant herein, had been importing the line of merchandise since 1947, he was not asked to testify concerning any sales which may have resulted from such prior importations. Appellant's counsel elicited testimony from this witness relating to the handling and disposition of the particular merchandise covered by the appeals before the court. The schedule of charges placed in evidence as plaintiff's exhibit 7 and under which deductions from the United States price is sought, relates solely to the entries before the court. Likewise, the balance sheets offered and received in evidence as plaintiff's exhibit 8 and collective exhibit 9 relate to the merchandise before the court. The same must be said with respect to the breakdown sheet, which was offered and received in evidence as plaintiff's exhibit 10. And counsel for the appellant believed that the merchandise samples, which were offered and received in evidence as plaintiff's illustrative exhibits 1 through 4, came from the involved shipments although he was of the opinion that it was impossible so to establish.

Moreover, apart from the question of the evidentiary value of the unpublished pricelists, which were offered and received in evidence as plaintiff's exhibits 5 and 6, these documents also manifest identification with the merchandise covered by the reappraisement appeals now before the court, as does the testimony of Mr. Kaufmann on the subject of prices, which testimony these documents purport to corroborate. The testimony and the documents reflect prices which are coterminous with the period of the importation of the merchandise before the court.

Conspicuously absent from the instant record, however, is evidence of prices at which similar merchandise of a prior importation or importations, if any, were offered for sale or sold in the United States. It is noted from the record that the very first of the involved exportations was made on September 3, 1953, but that this shipment was the fulfillment of order No. 134 which was placed abroad on May 23, 1953, for merchandise described as "Printed Linen (unfinished) 47/8" (see consular invoice No. 2744, dated September 7, 1953, under entry No. 1352 of October 5, 1953, in R59/16109). The merchandise order of this entry antedates the issuance of the initial pricelist in the fall of 1953 (plaintiff's exhibit 5) and the testimony of Mr. Kaufmann concerning prices in the fall of 1953. Also found among the official papers with this entry is the following letter:

September 28, 1953

Inter Maritime Forwarding Co.
38 Pearl Street
New York City

Attention: Mr. Stanley Carpp

Dear Mr. Carpp:

A cable has just been received from London, copy enclosed, showing that a current foreign value of the linen fabrics we are now importing from England

is 7 Shillings 6 Pence. I understand that the merchandise should be entered at this value but before doing so please make sure that your representative confers with the local Customs Appraiser.

Very truly yours

HILL, BROWN CORP.

PK :sb

PK

PETER KAUFMANN.

The foregoing facts appearing in the initial official papers before the court carry a tone which tends to support a conclusion that the merchandise covered by this entry represents the first shipment or importation of merchandise of the kind now before the court. If such be the case, it could account for the fact that the only particulars elicited from appellant's witness, Mr. Kaufmann, and supplied in the documentary evidence dealt with the merchandise now before the court. But even if we are not entitled to draw such a conclusion from the official papers in entry No. 1352 of R59/16109, such and other evidence of record does not deal with prices quoted and paid for prototype merchandise of previous importations made by appellant into the United States.

As we understand the limitations of appellant's contention, insofar as basis of valuation is concerned, it is that appellant is contending only for a United States value of the subject merchandise, having conceded that foreign and export values are nonexistent. Under section 1402(e), the court's inquiry must be directed to offerings and sales of prototype merchandise of a prior importation. The controlling words of section 1402(e) read : "The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, . . . in the principal market of the United States . . . at the time of exportation of the imported merchandise, . . . ." Under such language, a United States value cannot exist where there is no previously imported merchandise in the United States which is sold or offered for sale at the time of exportation of the merchandise before the court. *United States* v. *New York Merchandise Co., Inc.*, 31 CCPA 213, C.A.D. 274; *United States* v. *Collin & Gissel (Ludwig Baer)*, 29 CCPA 96, C.A.D. 176. And see and compare *Samuel Shapiro & Co., Inc.* v. *United States*, 48 Cust. Ct. 641, Reap. Dec. 10242, modified on other grounds, 50 Cust. Ct. 550, A.R.D. 155, affirmed 51 CCPA 89, C.A.D. 842, where, on the question of United States value or cost of production value, the issue resolved was whether Emmitsburg, Md., or Mattoon, Ill., was the principal market in the United States for the sale of prototype merchandise of a *prior* importation.

Even if plaintiff had established prices for prototype merchandise previously imported into the United States, its protest still could not

be sustained. Plaintiff's witness, in explanation of company sales policy, testified that no sales were ever made to consumers. The witness said, "We would not sell to consumers. We were a legitimate company selling to department stores, regular retail outlets and manufacturers." Under the valuation statutes, the merchandise must be offered to all who care to buy it, and in the usual wholesale quantities and in the ordinary course of trade. The law is not concerned with the persons who buy, but the manner in which they buy. *Rico, Inc.* v. *United States*, 48 CCPA 110, C.A.D. 773; *United States* v. *American Glanzstoff Corp.*, 24 CCPA 35, T.D. 48308; *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T.D. 42216. And inasmuch as plaintiff declined to offer its merchanidse to consumers, such merchandise was not freely offered for sale to all who cared to buy it.

Moreover, in computing the general expenses and, hence, profit, to be deducted from the domestic selling price of the merchandise, plaintiff has fallen into error. Its general expenses bear no relationship to the actual expenses incurred in its linen fabrics operations, which is the only phase of its business operations with which the court is concerned. The practice of apportioning operating expenses equally among all phases of a company's business operations, in lieu of the actual operating expenses incurred by a particular phase of business being inquired into, has not met with judicial approval. *Judson Sheldon International Corporation* v. *United States*, 51 Cust. Ct. 374, Reap. Dec. 10586, affirmed February 24, 1965, 54 Cust. Ct. 773, A.R.D. 183. Therefore, we agree fully with the trial court that "The record is barren of any evidence to show that in the processing and marketing of the merchandise at bar, operating costs were proportionately the same as the operating costs for conducting the other phases of plaintiff's business, however that proportion might be determined."

The foregoing authorities are controlling in the case at bar, since there is in the instant record no evidence of a single previous importation of prototype merchandise that was offered for sale or sold at the prices contended for by the appellant. Consequently, appellant's assignments of error numbered 1, 2, and 8 cannot be sustained.

Therefore, on the record before us, we find the facts:

1. The merchandise covered by the instant reappraisement appeals consists of printed linen fabric, which was exported to the United States from England during the period beginning September 3, 1953, and ending February 19, 1955, and entered at Philadelphia, Pa.

2. It is conceded that, at the times of exportation of the involved merchandise, such or similar merchandise was not freely offered for sale in the principal markets of the country of exportation either for domestic consumption or for exportation to the United States.

3. The involved merchandise was appraised on the basis of cost of production, as defined in 19 U.S.C.A., section 1402(f) (section 402 (f), Tariff Act of 1930) at £0/9/10.3875.

4. No evidence has been offered or received herein which establishes that, at the times of exportation of the involved merchandise, such or similar merchandise previously imported into the United States from England was freely offered for sale or sold in the principal market of the United States in the usual wholesale quantities and to all purchasers for domestic consumption at the price of $1.62 per yard, less 2 per centum, packed, for the period beginning September 1, 1953, and ending November 30, 1953, and at the price of $1.35 per yard, less 2 per centum, packed, for the period beginning December 1, 1953, and ending February 19, 1955.

5. The evidence establishes that, after importation into the United States, the involved merchandise was not offered for sale or sold to consumers other than manufacturers.

6. The evidence establishes that the general expenses and profit deducted from the United States selling prices of the involved merchandise were not the actual general expenses and profit chargeable to such merchandise.

On the foregoing facts, we conclude as matters of law:

1. The evidence of record does not overcome the presumption of correctness of the appraisement herein.

2. Cost of production, as defined in 19 U.S.C.A., section 1402(f) (section 402(f), Tariff Act of 1930), is the proper basis for determining the value of the involved merchandise.

3. Such value is represented herein by the appraised values. The judgment of the single judge is affirmed.

Judgment will be entered accordingly.

CONCURRING OPINION

DONLON, Judge: I concur in the result.

There are two issues before us. The first is whether there is evidence that would support a finding that United States value is the proper statutory basis for appraising this merchandise. The second, which we come to only after an affirmative finding on that issue, is whether the proofs adduced by appellant (plaintiff below) sufficiently establish what the United States value is.

As between United States value and cost of production as alternative bases of appraisement, our appeals court, in *United States* v. *Robert Reiner, Inc.*, 35 CCPA 50, C.A.D. 370, found itself, as we do here, with a case in which the parties were in agreement that no basis existed for finding either foreign or export value and that, if there was no

statutory United States value, then the cost of production, in the amounts appraised, was correct. As to the emphasis proper to the court in such a case, our appeals court said:

As before stated, it is well understood that while Congress preferred the application of the defined foreign or export values, it next preferred United States value in preference to cost of production. The United States value is more easily ascertained than the cost of production. Sometimes this has been especially true on account of the unavailability of information abroad with respect to the cost of producing the imported article. These considerations, in the past and now, have been and are influential in prompting this court to liberally construe the language of said United States value provision so as to bring about the obvious purpose of Congress and so as to make the provision workable in reflecting a fair value for appraisement. [P. 54.]

I am of opinion that the liberal construction enjoined on us by our appeals court does not warrant a finding of law that, in order to support United States value as the basis of appraisement in all circumstances, it must be shown that offerings were freely made in wholesale quantities to ultimate consumers.

It is well established that the required freely made offerings in wholesale quantities are such offerings to those who, in the circumstances of the particular business, are likely to be buyers in wholesale quantities of merchandise such as or similar to the merchandise to be valued. *Rico, Inc.* v. *United States*, 48 CCPA 110, C.A.D. 773, *Sani-Smoke, Inc.* v. *United States*, 50 CCPA 82, C.A.D. 825.

Appellant's proofs do not show that ultimate consumers would not buy in the usual wholesale quantity. What it has shown is that it would not sell in any quantity to ultimate consumers. This is not the proof that is required to meet the specifications of the statute. In my view, appellant's predicament arises from its failure of proof, not from an illiberal interpretation of the law.

Moreover, even if a liberal construction of appellant's proofs showed the free offerings in wholesale quantities which the statute requires, and I am of opinion that they do not, I concur that the proofs as to United States value are deficient.

For the reasons stated, I join in the judgment order but not in the findings.