HILL BROWN CORP. *v.* UNITED STATES  (No. 5235)*

United States Court of Customs and Patent Appeals, May 11, 1967**

*Allerton deC. Tompkins* for appellant.

*Barefoot Sanders,* Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, *Bernard J. Babb* for the United States.

[Oral argument February 8, 1967, by Mr. Tompkins and Mr. Babb]

*C.A.D. 917.

**Petition for rehearing denied July 17, 1967.

Before RICH, Acting Chief Judge, SMITH, ALMOND, Associate Judges, and WILLIAM H. KIRKPATRICK.***

SMITH, Judge, delivered the opinion of the court:

This is an appeal from the decision and judgment of the Third Division, Appellate Term of the Customs Court, 55 Cust. Ct. 771, A.R.D. 198, affirming the decision and judgment of a single judge sitting in reappraisement of certain printed linen drapery and slip-cover fabrics imported from England, 53 Cust. Ct. 412, R.D. 10823.

Both the trial judge and the Appellate Term ruled that cost of production, as defined in section 402(f) of the Tariff Act of 1930, is the proper basis for determining the value of the imported merchandise, and that such value is represented by the appraised value. It is appellant's contention, as it was below, that United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended, is the proper basis for appraisement and that such value is $1.172 per yard for those of the exportations made in 1953 and $0.975 per yard for the balance of the merchandise.

Section 402(a) of the Tariff Act of 1930 provides that cost of production controls only when neither the foreign value, the export, value, nor the United States value is satisfactorily ascertained. Appellant concedes there was no foreign value and no export value for such or similar merchandise, as necesarily found by the appraiser in reaching his conclusion that cost of production values should be the basis for appraisement. The issue is thus whether appellant has established, by satisfactory proof, the United States value, as then resort to cost of production would be prohibited by section 402(a).

The record consists of the testimony of a single witness for appellant and accompanying exhibits. A summary of the pertinent facts made by the trial judge and quoted by the Appellate Term, reads:

Plaintiff is a corporation engaged in three separate business operations. Primarily, it is a manufacturer of domestic drapery and slipcover fabrics which are produced in Clifton, N.J. It is also an importer of two distinct lines of products, to wit, "man-made fibers for resale to the textile industry in the United States," and "decorative linens for distribution throughout the United States for drapery and slipcover purposes." It is the last-mentioned phase of plaintiff's business with which we are here principally concerned.

The linen fabrics in issue, as illustrated by four samples marked plaintiff's illustrative exhibits 1–4, are described as having been "made exclusively of flax, woven in various countries on the European continent, printed in an England printing plant in Barrowford, Lancashire, and shipped in patterns and designs typical of English decorative fabrics which had a wide market in this country." Except for the design, they are stated to be commercially interchangeable. These fabrics are purchased by plaintiff for its own account with exclusive American rights for the designs selected.

It appears that, during the weaving operations, linen fabrics are produced in lengths of 50 or 100 yards, but before printing, to permit a continuous process,

***Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

the pieces are stitched together to form lengths as long as 1,000 yards. As imported, the merchandise was described as being flat-folded, pressed in bales, in individual piece lengths of several hundred yards, so handled to permit economies in shipment and to assure proper attractive packaging for the American market. After importation, the material was washed, cut into individual pieces approximately 50 yards long, doubled, and rolled on cardboard cores. It was sold in piece units of 40 to 50 yards or more, at prices which did not vary by reason of the quantity purchased. These prices were $1.62 per yard, less 2 per centum 10 days, net 30, f.o.b. Clifton warehouse on all sales to department stores, retailers, and manufacturers, and $1.52 per yard, less 2 per centum 10 days, net 30, f.o.b. Clifton, for all sales to jobbers and wholesalers, for the period through November 30, 1953. Thereafter the prices dropped to $1.35 or $1.25, respectively, less 2 per centum 10 days, net 30. Jobbers were allowed the 10 cents a yard discount to enable them to sell to small retailers. Plaintiff made no sales to consumers other than those designated as manufacturers. Otherwise there were no restrictions on the resale, disposition, or use of its merchandise by the purchasers.

The trial judge found, and the Appellate Term agreed, that the imported merchandise is not subject to appraisement at United States value. The statute provides:

Section 402 (e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provided as follows:

> (e) United States Value.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 2 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The trial judge was of the view the evidence failed to establish that the general expense and profit figures used by appellant in determining the allowances deducted from United States selling prices of the merchandise to attain the asserted United States value were the general expenses and profits chargeable to such merchandise.[1] His opinion states:

---

[1] The trial judge also found, and the Appellate Term agreed, that the imported merchandise was not freely offered for sale to all purchasers for domestic consumption in the usual wholesale quantities and in the ordinary course of trade as required by section 402 (e). This finding was based on the testimony that no sales were ever made to "consumers" and that appellant would not sell to "consumers" but instead sold to "department stores, regular retail outlets and manufacturers." The Appellate Term based an additional ground for affirmance on the reference in section 402 (e) to the price used in computing United States value being that "at the time of exportation of the imported merchandise." It held that "a United States value cannot exist where there is no previously imported merchandise in the United States which is sold or offered for sale at the time of exportation of the merchandise before the court." That proposition was held to be applicable here because the present record lacks "evidence of prices at which similar merchandise of a prior importation or importations, if any, were offered for sale or sold in the United States." We make no determination as to the correctness of these findings.

That a domestic price has in fact been established * * * is fairly inferable from the testimony of the witness who had personally sold this merchandise under a uniform sales policy of the company * * *. But it is the domestic price, less stated statutory deductions "for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery * * * profits not to exceed 8 per centum and a reasonable allowance for general expenses not to exceed 8 per centum on purchased goods," which must be found.

The statute provides for deduction for "profits not to exceed 8 percentum and a reasonable allowance for general expenses not to exceed 8 percentum on purchased goods." The record shows that appellant at the time in question was engaged in three separate business operations. The primary one was the manufacture of domestic drapery and slipcover fabrics in the United States. It also imported "man-made fibers for resale to the textile industry in the United States" and, thirdly, it imported the goods involved here, "decorative linens for distribution throughout the United States for drapery and slip-cover purposes." The evidence shows that no separate records of expenses and profits for the here involved phase of appellant's business were kept by the appellant. The amount of overhead expenses for the linen importations used in determining the asserted United States values were derived by finding the ratio between the total linen sales and total sales of all kinds and applying that percentage to the total overhead expenses for all three operations.

The trial judge found as follows:

Does it necessarily follow that the share of operating expenses attributable to linen fabric transactions bears the same proportion to the total general expenses as the volume of linen fabric sales bears to the total sales of all three phases of the company's operations? As pointed out in the *Judson Sheldon* case, supra, [51 Cust. Ct. 374, 379, Reap. Dec. 10586] "This is unsatisfactory proof, since it may well be that it cost more to handle other types of merchandise, or less, as the case may be, than the outlay incurred for handling the imported merchandise." The record is barren of any evidence to show that in the processing and marketing of the merchandise at bar, operating costs were proportionately the same as the operating costs for conducting the other phases or plaintiff's business, however that proportion might be determined.

The Appellate Term, in its principal opinion,[2] stated:

* * * in computing the general expenses and, hence, profit, to be deducted from the domestic selling price of the merchandise, plaintiff has fallen into error. Its general expenses bear no relationship to the actual expenses incurred in its linen fabrics operations, which is the only phase of its business operations with which the court is concerned. The practice of apportioning operating expenses equally among all phases of a company's business operations, in lieu of the actual operating expenses incurred by a particular phase of business being inquired into, has not met with judicial approval. *Judson Sheldon International Corpora-*

---

[2] One of the two judges sitting in the Appellate Term wrote a concurring opinion in the judgment but not in the findings.

*tion* v. *United States.* 51 Cust. Ct. 374, Reap. Dec. 10586, affirmed February 24, 1965, 54 Cust. Ct. 773, A.R.D. 183. Therefore, we agree fully with the trial court that "The record is barren of any evidence to show that in the processing and marketing of the merchandise at bar, operating costs were proportionately the same as the operating costs for conducting the other phases of plaintiff's business, however that proportion might be determined."

Appellant points out that, because its calculated figures for general expenses and profits exceeded the 8 per cent maximums permitted by statute, it actually used deductions of only 8 percent for each. It urges that the statute refers to a "reasonable" allowance for general expenses and claims that its procedure for calculating such expenses was a "reasonable" way to determine the allowance. Appellant argues:

* * * Until someone can point out a more *"reasonable"* way of apportioning to a particular item those costs that are common to many related items, we submit that we have complied fully with the statute. We have done the *"reasonable"* thing to determine the permitted *"reasonable"* allowances.

In the present case, the three types of operations engaged in by appellant may be susceptible of different percentages of general expenses or overheads and profits. Appellee argues:

* * * there is * * * no showing of record whether the same amount of profit, proportionately, was derived from the sale of the merchandise in the three classes dealt with by the appellant, or that the general expenses relating to imported flax fabrics were exactly the same in proportion as the general expenses incurred in handling the other merchandise sold by the importer.

While section 402 (e) is to be interpreted liberally, *United States* v. *Robert Reiner, Inc.*, 35 CCPA 50, 59, C.A.D. 370, appellant has not demonstrated that it is reasonable to attribute expenses and profits between the three phases of its business based solely on sales. As Judge Donlon stated in her concurring opinion:

* * * appellant's predicament arises from its failure of proof, not from an illiberal interpretation of the law.

We are satisfied that the finding below—that the general expenses and profits which appellant deducted from the United States selling prices were not proven to be the general expenses and profit chargeable to the imported merchandise—is clearly not lacking in adequate support.

Appellant requests that the case be remanded if it is found to have been correctly held that he did not prove the values he claims as making up the cost of production, citing *Clayton Chemical & Packaging Co.* v. *United States*, 383 U.S. 821 (1966).

We do not consider the *Clayton* case to be apposite here. In that case the trial judge accepted certain affidavits offered in evidence by the importer over the objections of the government. The Appellate Term of the Customs Court affirmed the trial judge on the basis that the gov-

ernment had not preserved its objection to the affidavits. This court reversed, the majority being of the opinion that the objections had been preserved and were well taken, and that, without the affidavits, appellant's proofs were inadequate. On petition for writ of certiorari, the Supreme Court ruled that this court erred in denying a request of the importer, made in a petition for rehearing, that the case be remanded to the Customs Court to permit the importer to fill the evidentiary void created by the holding that the affidavits were inadmissible. The facts are entirely different from the present case where the failure is in the sufficiency of the proof submitted and not in its admissibility. We do not think that the Supreme Court intended the *Clayton* case to be authority for remanding a case to permit a party to introduce additional evidence to overcome a simple insufficiency in the proof offered.

A party attacking an appraisal value has the two-fold burden of proving that the appraised value is incorrect and that his asserted value is correct. *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502. Appellant, because of its failure to prove that the deductions for general expenses and profits involved in arriving at its asserted United States value are correct, cannot prevail.

Confining our review of the decision and judgment of the Customs Court to matters of law as required by the statute, we find no reversible error.

The judgment is *affirmed*.

