**RELIANCE TRADING CORPORATION OF ILLINOIS**

**v.**

**UNITED STATES.**

**Reap. Dec. 11486;**
**Reappraisement R65/12349.**

United States Customs Court.
Jan. 30, 1968.

as amended, 19 U.S.C., section 1401a, is the correct basis for valuing the artificial flowers. Section 402, as amended, defines export value as follows:

> (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States. [19 U.S.C., sec. 1401a.]

The appraiser returned export values equal to the invoice unit prices, plus 11 percent, plus charges designated on the invoice as buying commission and loading charges. The sole dispute here is the 11 percent addition. Plaintiff claims the entered invoice unit prices, plus buying commission and loading charges, without the 11 percent addition, are the proper export values. While buying commission, if proven to be such, is not part of export value, United States v. Nelson Bead Co., 42 CCPA 175, C.A.D. 590, plaintiff has elected not to contest the buying commission charges included in these appraised export values.

The record before me consists of testimony of two witnesses for plaintiff, an affidavit (exhibit 1), lists of sales to plaintiff in 1962 (exhibits 2 and 3), lists of sales to other purchasers in the United States in 1962 (exhibits 4 and 5), and Treasury reports (defendant's exhibits A and B).

I find much in the record that is extraneous to the basic issue, namely, the price, at the time of exportation, at which merchandise such or similar to

Schwartz & Lidstrom, Chicago, Ill., and Barnes, Richardson & Colburn, New York City (Joseph Schwartz, Chicago, Ill., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Charles P. Deem, New York City, and Irving A. Mandel, trial attys.), for defendant.

LANDIS, Judge.

This appeal for reappraisement is limited to entry items described as artificial flowers (R. 2), exported from Hong Kong in July, 1962. The parties, both in their rule 15 statements and again in their briefs, agree that export value, section 402(b) of the Tariff Act of 1930,

these artificial flowers was "freely sold" in the ordinary course of trade, in the principal markets of Hong Kong. The term "freely sold," as defined in section 402(f) (1) means:

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise, * * *.

The facts which control the price at which these artificial flowers were "freely sold" are undisputed and can be briefly stated.

These artificial flowers, manufactured by Hong Kong Artificial Flower Works, Hong Kong, were exported to the United States by Reliance Trading Corporation, Hong Kong. Mr. Duncan Tong, the affiant in exhibit 1, is the sole owner of the manufacturing and exporting companies. Mr. Tong, together with his wife, also owns a 50 percent interest in Reliance Trading Corporation of Illinois, the importer and plantiff in this case.

The export of these artificial flowers was subject to the terms and conditions of a written agreement between Reliance, Hong Kong, and Reliance, Illinois, dated October 10, 1961 (exhibit A, attached exhibit 1). Under the agreement, Reliance, Hong Kong, appointed Reliance, Illinois, its exclusive sales agent in the United States for artificial flowers; Reliance, Hong Kong, agreed not to sell any of its products in the United States except through Reliance, Illinios; Reliance, Illinois, agreed to use "its best efforts to promote the sale of the HONG KONG COMPANY'S products" in the United States, and Reliance, Hong Kong, agreed that:

* * * in the event any business comes to it from said exclusive territory that it [Reliance, Hong Kong] will pay to the ILLINOIS COMPANY a flat commission of ten per cent (10%) on shipment of goods delivered to the above-mentioned territory.

It is a fact that during the year 1962 Reliance, Hong Kong, sold artificial flowers, identical to those sold to Reliance, Illinois, in this case, direct to other purchasers in the United States, at selling prices 11 percent higher than the selling prices to Reliance, Illinois. It charged the 11 percent in view of its agreement to pay Reliance, Illinois, 10 percent on all such sales. The agreement to pay a flat 10 percent commission on sales to other buyers in the United States, notwithstanding, Mr. Tong's affidavit (exhibit 1) equates the 10 percent with services performed and expenses incurred by Reliance, Illinois, in the United States, in connection with sales of artificial flowers to other buyers in the United States. These services and expenses, says Mr. Tong, consisted of importing samples, submitting the samples to other buyers, handling complaints on orders not properly filled, making showrooms available to other buyers thus saving them the time and expense of traveling to Hong Kong, for all of which Reliance, Illinois, incurred expenses "that would otherwise have been incurred by the other buyers." (Exhibit 1.) Mr. Maurice Goldblatt, who organized Reliance, Illinois, in 1961, gives substantially the same explanation for the 10 percent commission in his direct testimony. (R. 11 through 15.)

Plaintiff argues that, on the above facts, the invoice unit prices, plus the invoiced charges, are the prices at which these artificial flowers were "freely sold" under section 402(b). It rationalizes that, in the ordinary course of trade with Reliance, Illinois, the 11 percent was not part of price and "submit[s] that payments made by an importer for services rendered by the exporter or his agent in the United States, are not a part of the *export value of the merchandise in the foreign country.*" (Plaintiff's brief, page 10. Emphasis quoted.) What plaintiff factually infers, of course, is that the other buyers in the United States knew that, included in the price they were paying Reliance, Hong Kong, for artificial flowers, was a

charge for services performed for them in the United States by Reliance, Illinois. The record just does not support such inference.

■ Assuming the buyers did know, export value is not concerned with the cost of services or where they are performed, except as they affect the price at which merchandise is "freely sold." When I examine their relationship on this record, Reliance, Illinois, was either a selected purchaser or agent in the United States of Reliance, Hong Kong. The price to a selected purchaser does not come into the play of export value unless the sales to the selected purchaser are so restricted as to exclude sales to all purchasers at wholesale. Aceto Chemical Co., Inc. v. United States, 51 CCPA 121, C.A.D. 846. The fact here is that Reliance, Hong Kong, sold to all purchasers in the United States at a price 11 percent more than the price to its selected buyer, Reliance, Illinois. The fact that Reliance, Illinois, got 10 percent of the 11 percent does not make the 11 percent any less a part of the Reliance, Hong Kong, price to all purchasers. Nor does the record establish what happened to the remaining one percent. Presumably, it was profit to Reliance, Hong Kong.

■■ If the Reliance relationship to each other was that of seller and agent, then the 10 percent paid Reliance, Illinois, was, realistically, a commission. Indeed, the agreement of October 10, 1961, identifies it as a commission. The commission was an expense of the seller's export business since the buyers did not bargain to pay for Reliance, Illinois, services. When the only price at which merchandise is freely sold in the ordinary course of trade includes a commission, then the commission is part of the actual market value of the goods. Batten & Co. v. United States, 5 Ct.Cust. Appls. 447, Treas.Dec. 34975. Export value includes a selling commission paid by an importer to the exporter's sole agent in the United States. United States v. Barth Feinberg, Inc., 5 Cust. Ct. 482, Reap.Dec. 4967; F. C. Gerlach & Co. et al. v. United States, 6 Cust.Ct. 710, Reap.Dec. 5084, affirmed on review, United States v. F. C. Gerlach & Co. et al., 7 Cust.Ct. 494, Reap.Dec. 5443; United States v. Philipp Brothers Chemicals, Inc., 46 Cust.Ct. 803, A.R.D. 134.

■■ I find nothing that even suggests that other buyers in the United States from Reliance, Hong Kong, had any option to buy artificial flowers at less than the appraised values in this case. The agreement to pay Reliance, Illinois, 10 percent was not alone tied to sales in the United States, but to artificial flowers exported and delivered to other buyers in the United States. Thus, even on sales of artificial flowers consummated in Hong Kong for delivery to the United States, Reliance, Illinois, was entitled to a 10 percent commission. It is a sound business concept that the value of services a seller makes available to a buyer is part of the seller's general expense of doing business which would be reflected in the price charged and the value of the goods. Tapetes Luxor, S. A., et al. v. United States, 56 Cust.Ct. 797, A.R.D. 206.

I find as facts:

1. That the merchandise of this appeal for reappraisement consists of artificial flowers exported in July 1962, by Reliance Trading Corporation, Hong Kong, on order from Reliance Trading Corporation of Illinois.

2. That, at the time of exportation, shipments of artificial flowers, from Reliance, Hong Kong, to Reliance, Illinois, were subject to the terms and conditions of a written agreement between said firms dated October 10, 1961.

3. That, at the time of exportation, Reliance, Illinois, was a selected purchaser or exclusive agent in the United States for export of artificial flowers from Reliance, Hong Kong.

4. That, at the time of exportation, in the ordinary course of trade, Reliance, Hong Kong, freely sold artificial flowers identical to those sold to Reliance, Illinois, to all purchasers in the United States at wholesale at prices 11 percent

higher than Reliance, Hong Kong, prices to Reliance, Illinois, and paid a flat commission of 10 percent to Reliance, Illinois, on all such artificial flowers delivered to other buyers in the United States.

5. That the artificial flowers of this appeal were appraised on basis of export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (T. D. 54165), at the invoice unit prices, plus 11 percent, plus charges designated on the invoice as buying commission and loading charges.

I conclude as a matter of law:

1. That export value, as defined in section 402(b), Tariff Act of 1930, as amended, is the proper basis for determining value of the artificial flowers in this appeal for reappraisement.

2. That the export value of the artificial flowers of this appeal is the price at which the artificial flowers were freely sold to all purchasers at wholesale in the ordinary course of trade.

3. That the export value of the artificial flowers of this appeal are the appraised values.

Judgment will be entered accordingly.