(A.R.D. 260)

RELIANCE TRADING CORPORATION OF ILLINOIS *v.* UNITED STATES

Entry No. 9178.

First Division, Appellate Term

(Decided September 5, 1969)

*Schwartz & Lidstrom* (*Joseph Schwartz* of counsel) for the appellant.
*William D. Ruckelshaus,* Assistant Attorney General (*Velta A. Melnbrencis* and *Andrew P. Vance,* trial attorneys), for the appellee.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: This is an application for review of the decision and judgment of a single judge sitting in reappraisement (*Reliance Trading Corporation of Illinois* v. *United States*, 60 Cust. Ct. 777, R.D. 11486, 279 F. Supp. 452 (1968)).

The merchandise, the subject of this proceeding, consists of a quantity of artificial flowers exported from Hong Kong in July 1962. It was appraised on the basis of export value, under section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoice unit prices, plus 11 percent, plus charges designated on the invoice as buying commission and loading charges. The trial court sustained the appraised values. The basis of appraisement is not in issue.

Appellant contends here, as it did in the court below, that the 11 percent added by the appraiser represents no part of statutory export value, and that the entered unit prices, plus buying commission and loading charges without the 11 percent addition, are the proper export values. Appellant herein waives any issue as to the buying commission and loading charges.

The pertinent statutes involved under the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, are as follows:

[Sec. 402](b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

    *      *      *      *      *      *      *

(f) Definitions.—* * *
(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
(A) to all purchasers at wholesale, or
(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
without restrictions as to the disposition or use of the merchandise by the purchaser, * * *.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or constructed value, as the case may be, can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

The record consists of the testimony of two witnesses for plaintiff, an affidavit (plaintiff's exhibit 1), lists of sales to plaintiff in 1962 (plaintiff's exhibits 2 and 3), lists of sales to other purchasers in the United States in 1952 (plaintiff's exhibits 4 and 5) and Treasury reports (defendant's exhibits A and B).

The facts which control the price at which these artificial flowers were "freely sold", as set forth by the trial court and which we adopt, are as follows:

These artificial flowers, manufactured by Hong Kong Artificial Flower Works, Hong Kong, were exported to the United States by Reliance Trading Corporation, Hong Kong. Mr. Duncan Tong, the affiant in exhibit 1, is the sole owner of the manufacturing and exporting companies. Mr. Tong, together with his wife, also owns a 50 percent interest in Reliance Trading Corporation of Illinois, the importer and plaintiff in this case.

The export of these artificial flowers was subject to the terms and condition of a written agreement between Reliance, Hong Kong, and Reliance, Illinois, dated October 10, 1961 (exhibit A, attached to exhibit 1). Under the agreement, Reliance, Hong Kong, appointed Reliance, Illinois, its exclusive sales agent in the United States for artificial flowers; Reliance, Hong Kong, agreed not to sell any of its products in the United States except through Reliance, Illinois; Reliance, Illinois, agreed to use "its best efforts to promote the sale of the Hong Kong Company's products" in the United States, and Reliance, Hong Kong, agreed that:

* * * in the event any business comes to it from said exclusive territory that it [Reliance, Hong Kong] will pay to the

ILLINOIS COMPANY a flat commission of ten percent (10%) on shipment of goods delivered to the abovementioned territory.

The record further discloses that during the year 1962, Reliance, Hong Kong, sold artificial flowers, identical to those sold to Reliance, Illinois, in this case, direct to other purchasers in the United States, at selling prices 11 percent higher than the selling prices to Reliance, Illinois. It charged the 11 percent in view of its agreement to pay Reliance, Illinois, 10 percent on all such sales.

The trial court in its decision stated:

> * * * The agreement to pay a flat 10 percent commission on sales to other buyers in the United States, notwithstanding, Mr. Tong's affidavit (exhibit 1) equates the 10 percent with services performed and expenses incurred by Reliance, Illinois, in the United States, in connection with sales of artificial flowers to other buyers in the United States. These services and expenses, says Mr. Tong, consisted of importing samples, submitting the samples to other buyers, handling complaints on orders not properly filled, making showrooms available to other buyers thus saving them the time and expense of traveling to Hong Kong, for all of which Reliance, Illinois, incurred expenses "that would otherwise have been incurred by the other buyers." (Exhibit 1.) * * *

It further appears that appellant's witness, Mr. Maurice Goldblatt, who organized Reliance, Illinois, in 1961, gave substantially the same explanation for the 10 percent commission in his direct testimony (R. 11–15). Mr. Goldblatt further testified that orders from other importers did not necessarily go through Reliance of Illinois, but could be sent directly to Reliance of Hong Kong, but could not be purchased at the same price as Reliance of Illinois because of the services performed by the latter (R. 25–27). He stated that anyone but Reliance of Illinois desiring to purchase artificial flowers from Reliance of Hong Kong had to pay 11 percent higher price than Reliance of Illinois (R. 30–31).

It is the position of the appellant that, on the above facts, the invoice unit prices, plus the invoiced charges, are the prices at which these artificial flowers were freely sold under section 402(b), *supra*. It argues that, in the ordinary course of trade with Reliance, Illinois, the 11 percent was not part of the price, and maintains that payments made by an importer for services rendered by the exporter or his agent in the United States, are not a part of the export value of the merchandise in the *foreign* country. Appellee, on the other hand, maintains that, as stated by the trial court, the issue here is the price at which such or similar merchandise was freely sold to all purchasers in the ordinary course of trade in the usual wholesale quantities (R. 14). The trial court, in holding that the 11 percent increase in the price of the merchandise from the exporter to purchasers other than

Reliance of Illinois was part of the export value of the merchandise, stated:

> * * * The fact here is that Reliance, Hong Kong, sold to all purchasers in the United States at a price 11 percent more than the price to its selected buyer, Reliance, Illinois. The fact that Reliance, Illinois, got 10 percent of the 11 percent does not make the 11 percent any less a part of the Reliance, Hong Kong, price to all purchasers. * * *

We are in accord with the holding of the trial court.

It is well settled that in reappraisement proceedings the plaintiff (appellant herein) has the two-fold burden of proving (1) the value found by the appraiser was not the correct value and (2) the value contended for is the proper one. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495 (1952). With respect to the artificial flowers at bar, there is a presumption (1) that such or similar merchandise was not freely sold or, in the absence of sales, offered for sale, to all purchasers, in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the claimed values, and (2) that they were so freely sold or offered at the appraised values. As observed by the trial court, it appears that the so-called commission in this case was an expense of the seller's export services since the purchaser in this case did not bargain to pay for the services of Reliance, Illinois. There is nothing in the record to indicate that other buyers in the United States from Reliance, Hong Kong, had any option to buy artificial flowers at less than the appraised values. As noted by the trial court, the agreement to pay Reliance, Illinois, 10 percent was not alone tied to sales in the United States but to artificial flowers exported and delivered to other buyers in the United States. It thus appears as indicated by the trial court, that even on sales of artificial flowers consummated in Hong Kong for delivery to the United States, Reliance, Illinois, was entitled to a 10 percent commission. The value of services a seller makes available to a buyer is part of the seller's general expense of doing business which would be reflected in the price charged and the value of the goods. *Tapetes Luxor, S.A., et al.* v. *United States*, 56 Cust. Ct. 797, A.R.D. 206 (1966), affirmed *United States* v. *Tapetes Luxor S.A., et al.*, 54 CCPA 116, C.A.D. 921 (1967).

In our opinion, the record does not establish a "usual wholesale quantity" for the merchandise in question. The record discloses that sales by the exporter herein to Reliance of Illinois amounted to more than 66 percent of the export sales to the United States, while the sales to other importers accounted for less than 34 percent of the total sales to Reliance of Hong Kong. However, there is no evidence to

establish the quantities in which other exporters sold such or similar merchandise for exportation to the United States.

Further, with respect to the "ordinary course of trade", the record in this case lacks evidentiary facts as to the conditions and practices which are normal in the artificial flower trade in the country of exportation, and there is no testimony about the sales practices of exporters other than Reliance of Hong Kong with respect to merchandise such as here in question. The correct export value of imported merchandise is the price at which the merchandise was freely offered to *all* purchasers. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846 (1964). As heretofore indicated, the record establishes that under no circumstances could any other United States purchaser obtain the same merchandise from the same exporter at the price paid by Reliance of Illinois but other United States purchasers would have to pay 11 percent more (R. 11, 30–31). The situation in this case is on all fours with that which prevailed in the case of *Inter-Maritime Fwdg. Co., Inc.* v. *United States*, 51 Cust. Ct. 529, A.R.D. 162 (1963), wherein the appellate term, page 534, in affirming the decision of the trial court, quoted from the opinion of the latter, as follows:

> * * * While it may be that the importer's sales arrangements with the shipper were normal and ordinary as between them, such arrangements to be conclusive as to a finding of "ordinary course of trade" in the determination of value must be that which is normal in the trade such as here generally.

The affidavit of Duncan Tong (plaintiff's exhibit 1), does not establish that appellant purchased the involved merchandise in the "usual wholesale quantities" and in the "ordinary course of trade", but only that the quantities purchased were usual and the course of trade was ordinary as between Reliance of Hong Kong and Reliance of Illinois.

Appellant in this case claims that the appraisement of the merchandise is "separable"; that the 11 percent which the appraiser added represents the amount paid by other importers for various services rendered by appellant in the United States, and is no part of the value of the goods *per se* in the principal market in Hong Kong, at least with respect to shipments to appellant. In this connection, appellee cites the decision of the court in *Alvin Naiman Corporation* v. *United States*, 54 Cust. Ct. 705, Reap. Dec. 11008 (1965). In our opinion, the holding in that case is not applicable in the present situation, involving as it does different circumstances from those in the case at bar. In the present case, appellant's claim that the advance of 11 percent was illegal brings into question the aforementioned statutory elements of export value, namely, "usual wholesale quantity" and "ordinary course of trade". The record in this case supports the appraised values and, specifically, the finding that, at the time of exportation, merchandise similar to

that in question was not freely sold or offered for sale to all purchasers, in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the claimed values. The fact that Reliance of Illinois received 10 percent of 11 percent increase to other customers of the exporter did not make the 11 percent addition any less a part of the exporter's price to all purchasers. It may be noted that the record in this case does not establish what happened to the remaining one percent. The trial court stated that "Presumably, it was a profit to Reliance, Hong Kong." Further, the fact that the services rendered by Reliance of Illinois for the 10 percent commission were rendered in the United States does not preclude their inclusion in the export value of the involved merchandise. The place where the services are performed is not controlling as long as they were considered a part of the price of the merchandise. *Erb & Gray Scientific, Inc.* v. *United States*, 53 CCPA 46, C.A.D. 875 (1966).

For all of the reasons heretofore stated, we find that the 11 percent addition here in question was properly included in the appraiser's computation of the export value of the involved merchandise. The decision of the trial judge is hereby affirmed.

The court, therefore, makes the following findings of fact:

1. That the merchandise involved herein consists of artificial flowers, exported by Reliance Corp., Hong Kong, to Reliance Trading Corp. of Illinois on or about July 1962.

2. That said merchandise was appraised on the basis of export value under section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the unit values, plus 11 percent, plus the buying commission and loading charges, as invoiced.

3. That the merchandise does not appear on the Final List published in T.D. 54521.

4. That at the time of exportation of the involved merchandise, such or similar merchandise was freely sold or, in the absence of sales, offered for sale, to all purchasers, in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the appraised values.

5. That at the time of exportation, such or similar merchandise was not freely sold or, in the absence of sales, offered for sale, to all purchasers, in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the claimed values.

We conclude as matters of law:

1. That the proper basis for the determination of the value of the merchandise in question is export value, as that value is defined

in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. That the correct export values in this case are represented by the appraised values.

The judgment of the trial court is, therefore, affirmed. Judgment will be rendered accordingly.